USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 3-17-2020

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------- X
DATACATALYST, LLC,

                     Plaintiff,

-against-

INFOVERITY, LLC,

                     Defendant.
---------------------------------------------------------------- X

**ORDER DENYING MOTION TO DISMISS OR TRANSFER VENUE**

20 Civ. 310 (AKH)

ALVIN K. HELLERSTEIN, U.S.D.J.:

       Plaintiff DataCatalyst, LLC ("DataCatalyst" or "Plaintiff") performed business development services for Defendant Infoverity, LLC ("Infoverity" or "Defendant"). Plaintiff brought this action alleging that Defendant has failed to pay commissions owed under the terms of the parties' contract. Defendant moves to dismiss under Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, to transfer venue to the United States District Court for the Southern District of Ohio under 28 U.S.C. § 1404(a). For the reasons that follow, Defendant's motion is denied.

## BACKGROUND[1]

       DataCatalyst, led by its principal Scott Rompala, provides data management consulting and sales services to companies. DataCatalyst is based in New York. From 2017 to 2019, DataCatalyst performed services for Infoverity, an Ohio-based company that implements Master Data Management software.

---

[1] I accept as true all factual allegations in Plaintiff's complaint for purposes of the motion to dismiss. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 93 (2d Cir. 2007). As to the motion to transfer venue, "the Court assumes allegations in the Complaint to be true, but may also look to evidence outside of the Complaint, even to the degree that such evidence contradicts allegations in the Complaint." *Tianhai Lace USA Inc. v. Forever 21, Inc.*, No. 16-cv-5950, 2017 WL 4712632, at *2 (S.D.N.Y. Sept. 27, 2017).

DataCatalyst and Infoverity entered into a Subcontractor Services Agreement[2] on July 14, 2017. Section IX of the Subcontractor Services Agreement addresses choice of law and venue:

> This Agreement shall be construed in accordance with, and governed in all respects by, the internal laws of the State of Ohio (without giving effect to principles of conflicts of laws). Any legal action or other legal proceeding relating to this Agreement or the enforcement of any provision of this Agreement may be brought or otherwise commenced in any state or federal court located in Columbus, Ohio. Subcontractor: (1) expressly and irrevocably consents and submits to the jurisdiction of each state and federal court located in Columbus, Ohio in connection with any such legal proceeding; and (2) agrees that each state and federal court located in Columbus, Ohio shall be deemed to be a convenient forum. Any controversy or claim arising out of or relating to this contract, or the breach thereof, shall be settled by arbitration. Judgment on the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof.

The Subcontractor Services Agreement contemplated that DataCatalyst would provide services "as requested from time to time by Infoverity" and that the scope of and payment for those services would be detailed in separate Statements of Work. Most relevant to DataCatalyst's case is Statement of Work No. 008.[3] Pursuant to Statement of Work No. 008, Rompala served as Northeastern US Regional Lead and Global Financial Services subject matter expert for Infoverity. Rompala's work included serving and expanding Infoverity's client base in the Northeastern United States. In addition to a base monthly retainer and other fees and expenses, DataCatalyst was supposed to receive "7% of sourced or influenced revenue invoiced to client (i.e. procuring cause, referral-based, introduction and/or cultivation of business

---

[2] The Subcontractor Services Agreement is attached as Exhibit A to Infoverity's Motion to Dismiss or, in the Alternative, to Transfer Venue. ECF No. 6-1. It is appropriate to consider the Subcontractor Services Agreement in resolving this motion. *See DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) ("In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider . . . documents incorporated by reference in the complaint."); *Mohsen v. Morgan Stanley & Co. Inc.*, No. 11 Civ. 6751, 2013 WL 5312525, at *3 (S.D.N.Y. Sept. 23, 2013) ("In deciding a motion to transfer, a court may consider material outside of the pleadings.").

[3] Statement of Work No. 008 is attached as Exhibit A to Infoverity's Reply Memorandum in Support of Its Motion to Dismiss, or in the Alternative, to Transfer Venue. ECF No. 9-1.

2

relationship)." To identify revenue "sourced or influenced" by Rompala, the parties tracked business opportunities on Salesforce.com. Whenever an opportunity was credited to Rompala on Salesforce.com, DataCatalyst would receive 7% of the corresponding revenue. Statement of Work No. 008 dictated that Infoverity's obligation to pay DataCatalyst these fees would survive the expiration or termination of the Subcontractor Services Agreement or Statement of Work No. 008.

The relationship between DataCatalyst and Infoverity ended in January 2019. By this time, there were 159 opportunities credited to Rompala on Salesforce.com. DataCatalyst alleges that Infoverity has failed to pay it certain commissions due under Statement of Work No. 008. DataCatalyst received invoices and payments throughout the rest of 2019, but those allegedly contained errors and omissions. Plaintiff claims that it is aware of several opportunities that have resulted in revenue for Infoverity but for which DataCatalyst has not been paid. For example, DataCatalyst made a pitch to InterFace Flooring on behalf of Infoverity. The principal of InterFace Flooring told Rompala that InterFace Flooring has been working with Infoverity, but Infoverity has withheld this information from DataCatalyst. Infoverity has blocked attempts to gather more information about revenue from opportunities sourced or influenced by DataCatalyst.

DataCatalyst filed suit in the New York Supreme Court, New York County, bringing claims for breach of contract, violation of Ohio Revised Code § 1335.11, and accounting. Infoverity removed the action to this Court. Now, Infoverity moves to dismiss pursuant to Rule 12(b)(6) or to transfer venue to the United States District Court for the Southern District of Ohio pursuant 28 U.S.C. § 1404(a).

## DISCUSSION

### I. Defendant's Motion to Transfer Venue

Federal law governs a motion to transfer venue. *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 28 (1988). Because the Subcontractor Services Agreement dictates that the agreement should be governed by Ohio law, I apply Ohio law to interpretation of the forum selection clause, including determination of whether the clause is permissive or mandatory. *See Martinez v. Bloomberg LP*, 740 F.3d 211, 217-18 (2d Cir. 2014) ("[I]f we are called upon to determine whether a particular forum selection clause is mandatory or permissive, . . . we apply the law contractually selected by the parties.").

I find that the forum selection clause at issue is permissive rather than mandatory. "A permissive clause authorizes jurisdiction in a designated forum, but does not prohibit litigation elsewhere, whereas a mandatory clause dictates an exclusive forum for litigation under the agreement." *State ex rel. Cordray v. Makedonija Tabak 2000*, 937 N.E.2d 595, 601 (Ohio Ct. App. 2010). The parties agreed that an action relating to the Subcontractor Services Agreement "**may be** brought or otherwise commenced in any state or federal court located in Columbus, Ohio" and that "each state and federal court located in Columbus, Ohio shall be deemed to be **a** convenient forum." Subcontractor Services Agreement § IX (emphasis added). Such language, which includes permissive language and lacks terms of exclusivity, forms only a permissive forum selection clause. The Ohio Court of Appeals explains:

> A forum selection clause that authorizes jurisdiction in one forum but does not prohibit jurisdiction elsewhere is not mandatory. Similarly, when the words "may" or "should" are used, it signifies the parties' intent that a forum selection clause is permissive. On the other hand, a forum selection clause that provides that "jurisdiction and venue are fixed" in the designated forum contains "words of exclusivity" that make it mandatory.

4

*Huber v. Inpatient Med. Servs., Inc.*, 124 N.E.3d 382, 388 (Ohio Ct. App. 2018); *see also Renacci v. Evans*, No. 09CA0004–M, 2009 WL 3119733, at *5 (Ohio Ct. App. Sept. 30, 2009) (holding clause "consent[ing]" to venue in a particular court was permissive because it did not contain words of exclusivity or specifically prohibit actions elsewhere).

If a forum selection clause is permissive, the court performs a two-part analysis to determine whether to transfer venue. *Encompass Aviation, LLC v. Surf Air Inc.*, No. 18 Civ. 5530, 2018 WL 6713138, at *5 (S.D.N.Y. Nov. 30, 2018). "First, the court must determine whether the action sought to be transferred is one that 'might have been brought' in the transferee court." *In re Collins & Aikman Corp. Sec. Litig.*, 438 F. Supp. 2d 392, 394 (S.D.N.Y. 2006) (quoting 28 U.S.C. § 1404(a)). Plaintiff does not dispute that this action could have been brought in the Southern District of Ohio. "Second, the court must evaluate whether transfer is warranted using several factors relating to the convenience of transfer and the interests of justice." *Id.* Factors to be considered include:

> (1) the convenience of witnesses, (2) the convenience of the parties, (3) the location of relevant documents and the relative ease of access to sources of proof, (4) the locus of operative facts, (5) the availability of process to compel the attendance of unwilling witnesses, (6) the relative means of the parties, (7) the forum's familiarity with the governing law, (8) the weight accorded the plaintiff's choice of forum, and (9) trial efficiency and the interest of justice, based on the totality of the circumstances."

*Berman v. Informix Corp.*, 30 F. Supp. 2d 653, 657 (2d Cir. 1998).[4]

---

[4] Defendant argues that because there is a forum selection clause, the Court should apply a truncated analysis as set forth in *Atlantic Marine Construction Co., Inc. v. United States District Court for the Western District of Texas*, 571 U.S. 49 (2013). Under the *Atlantic Marine* analysis, "the plaintiff's choice of forum merits no weight," a court "should not consider arguments about the parties' private interests," and "transfer of venue will not carry with it the original venue's choice-of-law rules." 571 U.S. at 63-64. However, courts have generally limited the *Atlantic Marine* analysis to cases involving mandatory forum selection clauses, *Encompass Aviation*, 2018 WL 6713138, at *6, and I agree with that approach. The *Atlantic Marine* analysis guards against the party that "agrees by contract to bring suit only in a specified forum" but "flouts its contractual obligation and files suit in a different forum." 571 U.S. at 63-64. A party that files suit in a court outside the forum specified in a permissive forum selection clause does not flout any contractual obligation.

5

Here, multiple factors favor maintaining the action in this forum. Plaintiff chose to file suit in New York. There will likely be witnesses in and near New York because Rompala maintained his office here while working for Defendant and focused on developing business with Defendant's clients in the Northeast. While there will also likely be witnesses in Ohio because Defendant is headquartered there, I give greater weight to the convenience of the non-party witnesses, namely the clients in the Northeast. *See Indian Harbor Ins. Co. v. Factory Mut. Ins. Co.*, 419 F. Supp. 2d 395, 402 (S.D.N.Y. 2005) ("The convenience of non-party witnesses is accorded more weight than that of party witnesses."). The convenience of the parties weighs slightly in favor of the Southern District of Ohio. While the Southern District of New York would be more convenient for Plaintiff, Plaintiff agreed in the Subcontractor Services Agreement that Columbus, Ohio would be "deemed to be a convenient forum." Subcontractor Services Agreement § IX.

None of the remaining factors weigh strongly in favor of either venue. As to the locus of operative facts, I consider "where the contract was negotiated or executed, where it was to be performed, and where the alleged breach occurred." *Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829, 842 (S.D.N.Y. 2012). Here, the contract was negotiated and executed in both New York and Ohio, Plaintiff performed in New York, and Defendant allegedly breached in Ohio. The location of relevant documents is not a major consideration in an era of electronic records and eDiscovery. *Am. Steamship Owners Mut. Protection & Indem. Ass'n, Inc. v. LaFarge N. Am., Inc.*, 474 F. Supp. 2d 474, 484 (S.D.N.Y. 2007). Neither party has argued that "its financial situation would meaningfully impede its ability to litigate this case in either forum." *In re Collins*, 438 F. Supp. 2d at 398. "[T]he forum's familiarity with governing law is a factor that is generally given little weight." *Freeplay Music, LLC v. Gibson Brands, Inc.*, 195 F. Supp. 3d

6

613, 620 (S.D.N.Y. 2016). Federal courts are experienced in applying the law of different states. *Id.* Finally, trial efficiency and the interests of justice are neutral.

Based on the totality of these considerations, Defendant's motion to transfer venue is denied. "[T]he party requesting transfer carries the 'burden of making out a strong case for transfer.'" *N.Y. Marine & Gen. Ins. Co. v. LaFarge N. Am., Inc.*, 599 F.3d 102, 113-14 (2d Cir. 2010) (quoting *Filmline (Cross-Country Prods., Inc. v. United Artists Corp.*, 865 F.2d 513, 521 (2d Cir. 1989)). Defendant fails to meet that burden here, where facts, parties, and witnesses have meaningful ties to this forum.

## II. Defendant's Motion to Dismiss

Having found that venue shall remain in the Southern District of New York, I now turn to Defendant's motion to dismiss for failure to state a claim. Infoverity contends that DataCatalyst's claims fail to rise above the speculative level because DataCatalyst does not identify the specific accounts for which it has been deprived of commissions. Infoverity's argument is unavailing.

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The complaint here meets that standard. It sets out Infoverity's obligation to pay commissions, explains how to identify projects sourced or influenced by DataCatalyst, explains the basis for DataCatalyst's belief that Infoverity is withholding commissions, and includes a specific example of an account on which Infoverity has allegedly concealed revenue. Infoverity demands a level of specificity that is not required at the pleadings stage. *See Murray Engineering P.C. v. Remke*, No. 17 Civ. 6267, 2018 WL 3773991, at *6-7 (S.D.N.Y. Aug. 9, 2018) (finding plaintiff sufficiently alleged breach of contract where it

7

described the relevant contracts, identified nature of work, and alleged that defendants failed to pay plaintiff for services).

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss or transfer venue is denied. The case will proceed in this Court. The Clerk is directed to terminate the open motion (ECF No. 5). The oral argument scheduled for May 14, 2020 is cancelled. Defendant shall submit its answer to the complaint by 21 days from the date of this order. The parties shall appear for an initial conference May 15, 2020 at 10:00 a.m.

SO ORDERED.

Dated: March 17, 2020
New York, New York

ALVIN K. HELLERSTEIN
United States District Judge